**SO ORDERED.**

**SIGNED this 09 day of February, 2012.**

_____
Randy D. Doub
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

IN RE:

FRANK MORRISON SUTTON, JR.         CHAPTER 11
                                   CASE NO. 10-10539-8-RDD
    DEBTOR

ORDER DENYING CONFIRMATION OF
CHAPTER 11 PLAN OF REORGANIZATION

Pending before the Court is the Amended Chapter 11 Plan of Reorganization (the "Plan") and the Amended Disclosure Statement filed by Frank Morrison Sutton, Jr. (the "Debtor") on October 14, 2011 (the "Disclosure Statement");[1] the Objection to Confirmation of the Amended Plan and Objection to Approval of Disclosure Statement filed by the Bankruptcy Administrator on November 10, 2011; and the Objection of North Carolina Department of Revenue to Debtor's Amended Plan of Reorganization filed by the North Carolina Department of Revenue on November 28, 2011. The Court conducted a hearing on the Plan and Disclosure Statement on December 20, 2011 in Greenville, North Carolina.[2]

---

[1] The Debtor filed the original Chapter 11 Plan of Reorganization and Disclosure Statement on April 26, 2011.

[2] The Debtor also briefed the issues presented at the hearing.

## BACKGROUND

On December 28, 2010, the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). At the time the petition was filed, the Debtor resided in Kinston, North Carolina, but he now resides in Asheville, North Carolina. The Debtor is a licensed North Carolina physician who is employed by an anesthesiology practice in Asheville, North Carolina. The Debtor intends to fund the Plan through continued employment as an anesthesiologist.

The Plan establishes eight different classes of claims and creates a special class for educational loan claims separate from other unsecured claims. Class seven of the Plan consists of general unsecured claims totaling approximately $418,487.26.[3] The Debtor proposes to pay class seven a total of $16,000.00 within ninety days of the Effective Date of the Plan.[4] Class eight of the Plan consists of general unsecured educational loans totaling approximately $235,871.00.[5] The Plan proposes to pay class eight in full by making a regular monthly payment of $1,479.31. Thus, the Plan classifies unsecured claims into two separate classes: (1) class seven comprised of all

---

[3] The general unsecured class listed in the schedule attached to the amended disclosure statement includes the claims of Amanda Sutton, American Express Centurion Bank, Citicorp Credit Services, Eric Martinez, and the North Carolina Department of Revenue. Amanda Sutton and Eric Martinez are insiders.

[4] The Amended Plan originally provided class seven, general unsecured claims, would receive payment of $5,000.00. In an attempt to reconcile the Bankruptcy Administrator's Objection to Confirmation of Amended Plan, the Debtor proposed paying the general unsecured class a total of $16,000.00 at the hearing on confirmation of the Plan. The Debtor agreed to $16,000.00 because this was the amount the Debtor paid to the claims of class eight during the pendency of the bankruptcy between the filing date and the confirmation hearing.

[5] The Plan states class eight "consists of all educational loans within the meaning of 11 U.S.C. § 523(a)(8)." Class eight– Educational Loans–was treated as unimpaired in the Plan.

dischargeable unsecured debt; and (2) class eight comprised of nondischargeable educational loans. This treatment results in a payout of 3.8% on the claims in class seven. If the educational loans were not in a separate class, the unsecured creditors would receive a 36% distribution on their claims.[6]

The Debtor argues placing the educational loans in a separate class is permissible because the loans are nondischargeable pursuant to 11 U.S.C. § 523(a)(8) and are distinctly different from the remaining general unsecured claims.

## DISCUSSION

### I.   The Dissenting Class

In the present case, the Court must determine whether the Plan complies with 11 U.S.C. § 1129(b) based on the existence of a dissenting class. At the time of the hearing, no creditor had a pending objection to the proposed Plan.[7] Class eight was unimpaired and did not vote. The ballots showed that class seven is impaired and did not accept the Plan.[8] When an impaired class does not vote in acceptance, the Plan may only be "crammed down" if it does not discriminate unfairly and is fair and equitable to the impaired rejecting class. 11 U.S.C. § 1129(b)(1). Therefore, because

---

[6] Class seven consists of $418,487.26 unsecured debt. Combining class seven and class eight by adding the $235,871.00 educational loans from class eight to class seven results in total unsecured debt of $654,358.26. The *pro rata* distribution to each creditor is calculated by dividing $235,871.00 by $654,358.26. $235,871.00/$654,358.26 = 0.3604 or 36%.

[7] At the hearing, the Debtor's counsel informed the Court that the North Carolina Department of Revenue agreed to the treatment of its claims under the proposed Plan, although its objection was not formally withdrawn.

[8] Class seven failed to be an accepting class because "more than one-half in number of the allowed claims" did not accept the plan. 11 U.S.C. § 1126(c). Three claims voted in favor of the Plan and three claims rejected. Since class seven is a rejecting class, no issue was raised in regard to insider claims being included in class seven, although counsel for the Debtor stated insider claims are usually treated as a separate class.

class seven is an impaired class that rejected the Plan, the Plan is subject to fulfilling the requirements for confirmation pursuant to § 1129(b).

**II.     The Unfair Discrimination Standard**

Section 1129(b) provides the bankruptcy court shall confirm a plan that "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). "The prohibition under section 1129(b)(1) is against 'unfair discrimination' and not simply discrimination of any kind." *In re Renegade Holdings, Inc.*, 429 B.R. 502, 521 (Bankr. M.D.N.C. 2010) *reh'g granted*, 2010 WL 2772504 (Bankr. M.D.N.C. 2010).  Thus, "'[t]here can be 'discrimination,' so long as it is not 'unfair'" *Id*. (quoting 7 Collier on Bankruptcy ¶ 1129.03[3] (16th ed. 2009)).

"Courts have struggled to give the unfair discrimination test an objective standard." 7 Collier on Bankruptcy ¶ 1129.03(3)(a) (Alan N. Resnick & Henry J. Sommer eds., 16th ed., 2011).  In the Chapter 11 context, some courts have borrowed from the Chapter 13 unfair discrimination rule provided for in 11 U.S.C. 1322(b)(1) and proposed a test that examines the factors based on reasonableness of the discrimination.

> The Fourth Circuit affirmed one such test, which considers the following four factors:
>
> (1) whether there is a reasonable basis for the discrimination; (2) whether the plan can be confirmed and consummated without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) the treatment of the classes discriminated against.[9]

---

[9] In some Chapter 13 cases, courts apply variations of this test, asking:  (1) Is there a rational basis for the discriminatory classification? (2) Is the particular disparate treatment necessary to the debtor's plan under Chapter 13? (3) Has the discriminatory classification been proposed in good faith? (4) Is there a meaningful payment to the class of unsecured creditors that

*Ownby v. Jim Beck, Inc. (In re Jim Beck, Inc.)*, 214 B.R. 305, 307 (W.D. Va. 1997), *aff'd*, 162 F.3d 1155 (Table) 1998 WL 546067 (4th Cir. 1998). *See also In re Aztec Co.*, 107 B.R. 585 (Bankr. M.D. Tenn. 1989); *In re Union Fin. Servs. Group, Inc.*, 303 B.R. 390 (Bankr. E.D. Mo. 2003); *In re Am. Homepatient, Inc.*, 298 B.R. 152 (Bankr. M.D. Tenn. 2003); *Labib-Kiyarash v. McDonald (In re Labib-Kiyarash)*, 271 B.R. 189 (B.A.P. 9th Cir. 2001). Several variations of this test are used to determine if discrimination under a plan is unfair for the purposes of § 1129(b)(1). *In re Renegade Holdings, Inc.*, 429 B.R. at 521.

Finding the factors to be somewhat redundant, some courts have found that, overall the test "can be distilled down to two basic elements: (1) there must be a reasonable basis for the discrimination; and (2) the extent of the discrimination must be necessary in light of the basis for the discrimination." *Id*.

These tests are criticized,

> either as being too strict, as is the case where no discriminatory treatment is allowed unless specifically provided by statute; too loose, as where the only consideration is whether creditors discriminated against received as much as they would in Chapter 7; or too vague, as where the articulated multifactor tests for determining unfair discrimination are circular, overlapping and ultimately measured against terms like "case-by-case basis" . . . .

*In re Mason*, 456 B.R. 245, 250 (N.D.W. Va. 2011) (footnote omitted) (citing Stephen L. Sepinuck, *Rethinking Unfair Discrimination in Chapter 13*, 74 Am. Bankr. L.J., 341, 384-87 (2000). Thus,

---

have been discriminated against? (5) Is the degree of difference between what the creditors discriminated against will receive under the proposed plan and the amount they would receive if there was no separate classification excessive under the facts of the case? *In re Klobe*, 199 B.R. 569,575 (Bankr. D. Md. 1996). *See also In re Husted*, 142 B.R. 72 (Bankr. W.D.N.Y. 1992); *In re Delauder*, 189 B.R. 639 (Bankr. E.D. Va. 1995).

more recently, courts have proposed more narrow and delineated standards. *See Id*. at 252 (holding "a debtor must be able to articulate a reason why the discriminatory treatment is being proposed, and be able to demonstrate that a lesser discriminatory means of treatment is not advisable."). Other courts have attempted to establish a bright-line rule to determine if discrimination is unfair, requiring the discrimination to "provide a substantial benefit to the disfavored creditors, even if that benefit provides some concurrent benefit to a debtor." *In re Colley*, 260 B.R. 532, 540 (Bankr. M.D. Fla. 2000).[10]

Another approach to the unfair discrimination analysis in Chapter 11 cases imposes a rebuttable presumption when there is:

> (1) a dissenting class; (2) another class of the same priority; and (3) a difference in the plan's treatment of the two classes that results in either (a) a materially lower percentage recovery for the dissenting class (measured in terms of the net present value of all payments), or (b) regardless of percentage recovery, an allocation under the plan of materially greater risk to the dissenting class in connection with its proposed distribution.[11]

*In re Dow Corning Corp.*, 244 B.R. 705, 710 (Bankr. E.D. Mich. 1999), *aff'd in relevant part* 255 B.R. 445 (E.D. Mich. 2000), *aff'd in part and remanded Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648 (6th Cir. 2002); *see also In re*

---

[10] *In re Colley*, 260 B.R. 532 (M.D. Fla. 2000) specifically addresses whether a debtor may discriminate in favor of educational loans pursuant to 11 U.S.C. 1322(a)(5) and held that continued payments on a long-term nondischargeable debt while only paying unsecured creditors a 2% dividend unfairly discriminates against those creditors.

[11] The test adopted in *In re Dow Corning* was first suggested by Bruce A. Markell in the article *A New Perspective on Unfair Discrimination in Chapter 11*, 72 Am. Bankr. L.J. 227 (1998).

*Prosperity Park, LLC*, No. 10-31399 2011 WL 1878210 *4 (Bankr. W.D.N.C. May 17, 2011); *see, e.g. In re Sentry Operating Co. of Tex., Inc.*, 264 B.R. 850 (Bankr. S.D. Tex. 2001).

Of concern to this Court is that the Debtor present evidence as to a reasonable basis for disparate treatment between class seven and class eight, which is analyzed through application of the four-factor test affirmed by the Fourth Circuit in *Ownby*, 214 B.R. 305.

### III. Discrimination on the Basis of Nondischargeability

Section 1122(b) allows a plan to separately classify unsecured debts. However, separate classification is limited by the § 1129(b)(1) prohibition against unfair discrimination between each class of claims that is impaired under the plan and has not accepted the plan. *In re Eitemiller*, 149 B.R. 626, 628 (Bankr. Idaho 1993).

Whether a plan may discriminate in favor of a claim for educational loans based solely on the nondischargeable nature of the claim is a subject of debate among bankruptcy courts. Most of the cases arise under Chapter 13 because student loan debt is primarily limited to reorganization of an individual. However, in both Chapter 11 and Chapter 13 cases, the majority view finds that a plan favoring student loan claims over other unsecured creditors on the basis of nondischargeability unfairly discriminates against the unsecured creditors. *In re Eitemiller*, 149 B.R. 626; *see, e.g. In re Gonzalez*, 206 B.R. 239 (Bankr. S.D. Fla. 1997); *In re Rooney*, 436 B.R. 454 (Bankr. N.D. Ohio 2010); *In re Klobe*, 199 B.R. 569 (Bankr. D. Md. 1996). In so finding, courts often place emphasis on Congress' failure to specifically provide for priority treatment of educational loan claims and the favor already granted to educational loans because they are nondischargeable. *In re Mason*, 452 B.R. at 250 (citing Stephen L. Sepinuck, *Rethinking Unfair Discrimination in Chapter 13*, 74 Am. Bankr.

L.J., 341, 384-87 (2000)).  Furthermore, some courts find that other debts excepted from discharge, such as willful and malicious injury, are generally denied special treatment.  *Id*.

A minority of courts have found that a plan may discriminate against unsecured debt in favor of long-term nondischargeable debt pursuant to 11 U.S.C. 1322(b)(5). *See In re Colley*, 260 B.R. at 535 (holding a debtor must show discrimination in favor of nondischargeable educational loans provides substantial benefit to disfavored creditors); *e.g. In re Cox*, 186 B.R. 744, 746 (Bankr. N.D. Fla. 1995) (finding 11 U.S.C. 1322(b)(5) allowed the court to confirm a Chapter 13 plan that discriminates in favor of nondischargeable student loans).  The minority courts generally reason (1) the debtor will not be afforded a fresh start if the student loan is not separated from other general unsecured claims; (2) strong public policy exists for repayment of educational loans; (3) Congress prefers reorganization over liquidation; and (4) unsecured creditors are not harmed by favorable treatment because distribution must be equivalent to liquidation under Chapter 7.  *In re Mason*, 456 B.R. at 250.

Specifically, in the case of nondischargeable educational loans, the Court finds a plan may discriminate between unsecured classes, but only if such discrimination is not unfair as analyzed under the four-factor test. *See In re Klobe*, 199 B.R. 569 (Bankr. D. Md. 1996) (holding a five-factor variation of the unfair discrimination test applies to nondischargeable educational loans.); *In re Martin*, 189 B.R. 619 (Bankr. E.D. Va. 1995) (finding a debtor must demonstrate "fair" discrimination.); *See also In re Labib-Kiyarash*, 271 B.R. 189; *In re Groves*, 39 F.3d 212. Therefore, the burden of proving that separately classifying educational loans presumptively nondischargeable pursuant to § 523(a)(8) from other unsecured debt is not discriminatory falls upon the debtor proposing the plan. *See In re Armstrong World Indus., Inc.*, 348 B.R. 111, 122 ( D. Del.

8

2006) (finding plan proponents bear the burden of establishing a plan complies with 11 U.S.C. § 1129).

### IV.   Application to the Present Case

At the hearing on confirmation of the Plan, the Debtor did not present any evidence to suggest the four-factor test affirmed by the Fourth Circuit is satisfied in this case.

The Debtor argues that because class eight consists of educational loans, this alone is sufficient to establish separate classification and therefore, does not unfairly discriminate against other unsecured claims in class seven. The Debtor asserts that because the educational loans are presumptively nondischargeable pursuant to § 523(a)(8), the discrimination between class seven and class eight is not unfair because class eight's claims would receive full payment after completion of the Plan.[12] The Debtor also argues the treatment of class eight does not unfairly discriminate against class seven because class seven receives a greater distribution under the Plan than it would through Chapter 7 liquidation.

The Debtor testified his net income is approximately $15,000.00 per month and his expenses are approximately $5,400.00 per month. The Debtor also testified he accumulated approximately $50,000.00 in the twelve months following the filing of the bankruptcy petition from income earned. The Debtor testified he will pay to class seven, the unsecured creditors, $16,000.00 and retain

---

[12] In support of his argument, the Debtor cites *In re Mason*, 456 B.R. 245 (Bankr. N.D.W. Va. 2011) as holding separate classification of nondischargeable educational loans does not unfairly discriminate. After further review, the bankruptcy court in that case did not confirm the proposed Chapter 13 plan but instead set a confirmation hearing at which the court required the debtor "to articulate a reason why the discriminatory treatment [was] being proposed, and be able to demonstrate that a lesser discriminatory means of treatment [was] not advisable." *In re Mason*, 456 B.R. at 248. The court confirmed a Chapter 13 plan in *In re Mason* that treats all unsecured claims, including the educational loans, in a single class. *In re Mason*, No. 10-02092 at 3 (Bankr. N.D.W. Va. Oct. 21, 2011).

approximately $60,000.00 upon completion of the Plan period. The Plan also provides that the Debtor shall make no further payments to class eight until the completion of the payments to class seven, at which time the Debtor shall resume payments to class eight in accord with the original loan agreements with creditors in the class.

Following the guidelines of the four-factor test, the Court first notes the Debtor suggests the nondischargeable nature of the debt in class eight is a reasonable basis for discriminating against class seven. This Court is not persuaded that the nondischargeable nature of the claim *alone* is a reasonable basis for separating educational loans from other unsecured debts.

The Debtor expressed concerns that combining class seven and class eight would effectively set himself up for future default on the educational loan debt during the pendency of the Plan and was a reasonable basis for discrimination. However, the Debtor presented no evidence to support these contentions. Without facts as to the terms of the loan agreements, the conditions of default, and the consequences upon default, this Court is unable to determine whether favoring class eight is reasonable in light of the potential for default on the educational loans.[13]

Second, the evidence is unclear as to whether the Plan could be confirmed and consummated without the discrimination. The Debtor testified that his income was not expected to increase unless he worked more hours or took another job. Thus, the proposed payments were the maximum the Debtor could make based on his income and reasonable expenses. Therefore, the Debtor argues the

---

[13] The Debtor's counsel argued that if the classes were combined and the Debtor made no payment on the educational loans or made only partial payment on the educational loans he would be in default and *possibly* subject to penalty under the loan agreements. Brief in Support of Confirmation of Debtor's Amended Plan of Reorganization at 6 *In re Sutton*, No. 10-10539-8-RDD (Bankr. E.D.N.C. Jan. 19, 2012). However, such arguments do not equate to evidence. No facts were presented regarding the current interest rate of the loans, the terms of default, or other penalties and consequences upon default.

discrimination is necessary in that the amount of the educational loan payment is all he can pay per month. However, the Debtor's projected income and expenses indicate that for six months out of the next twelve, the Debtor's income would exceed his expenses and Plan payments by at least $521.00, and in most months by $813.00.[14]

Additionally, the Debtor testified that upon completion of the Plan, he would retain approximately $60,000.00.[15] Section 1129(b)(2)(B)(ii) provides "in a case in which the debtor is an individual, the debtor *may* retain property included in the estate under section 1115." 11 U.S.C. § 1129(b)(2)(B)(ii) (emphasis added). The use of the permissive "may" does not require that the Debtor retain any property earned post-petition. As such, the Debtor is not precluded from retaining the $60,000.00, but the Bankruptcy Code does not mandate that he retain it either.

In light of the retained $60,000.00, the Debtor presented no evidence the Plan could not be consummated without the present discrimination.[16] The evidence presented did not address whether the plan could be consummated if class seven and class eight were treated as a single class or if the insider claims were placed in a separate class. Therefore, because the Debtor presented no evidence indicating it would be impossible for him to consummate the Plan in a "lesser discriminatory

---

[14] The Debtor's projected income and expenses for 2012 indicates that for the months of January, February, June, July, August, and October the insurance payments cause the Debtor's expenses to exceed his income. Additionally, the twelve month projections indicate the Debtor maintains a balance of at least $50,000.00 at all times, more than enough to to cover the insurance payments.

[15] The Court notes that while the Debtor intends to retain $60,000.00 of property, such retention does not violate 11 U.S.C. § 1129(b)(2)(B)(ii) as the property was earned post-petition and is included in the estate pursuant to 11 U.S.C. § 1115. *See In re Maharaj*, 449 B.R. 484 (Bankr. E.D. Va. 2011) *appeal docketed*, No. 11-1747 (4th Cir. July 20, 2011).

[16] 100% for class eight and 3.8% for class seven.

manner," he failed to prove the Plan cannot be confirmed and consummated without separating the classes. *In re Mason*, 456 B.R. at 250.

Third, the Debtor asserts the discrimination between the classes is proposed in good faith because creditors in class seven will receive $16,000.00 through the Plan when they are entitled to nothing if the Debtor liquidated under Chapter 7. The Court finds no evidence to believe the treatment of the classes is not proposed in good faith. However, the Court is also not convinced that compliance with the "'best interest of creditors' test of section 1129(a)(7)(A)(ii) . . . give[s] the debtor[] license to discriminate against creditors."[17] *In re Eitemiller*, 149 B.R. at 629. As the court in *In re Eitemiller* explained, such a reading of § 1129(b)(1) would allow a determination of unfair discrimination to "turn solely upon whether 'the best interests of creditors' test [was] met." *Id*. Furthermore, the Fourth Circuit test mandates four factors must be evaluated, not just one factor.

As to the final factor, the Court finds the evidence presented regarding the treatment of the discriminated class suggests it will receive a distribution of 3.8% on its claims while class eight will receive a 100% distribution. The disparity between the classes is highly discriminatory, especially considering two of the unsecured claims in class seven are those of insiders that account for almost 66% in amount of the class. The Debtor presented no evidence suggesting the basis for this treatment other than the nondischargeable status of class eight.

The Debtor also failed to produce evidence indicating the Plan as proposed is more favorable than lesser forms of discrimination. The Plan does not provide a specified time-frame for the treatment of the class eight claims but states the Debtor will resume payments under the original loan agreements. Because class eight is unimpaired under the Plan, the Court must presume the class will

---

[17] The court in *In re Eitemiller* refers to 11 U.S.C. § 1129(a)(7)(A)(ii).

be paid in full to the extent of the $235,871.00 debt. If class seven and class eight were combined and the $235,871.00 were available to all unsecured creditors, there would be a 36% *pro rata* distribution.[18] Alternatively, if the Debtor separated the insider claims from class seven, and the remaining members of class seven received $16,000.00 as proposed under the Plan, those creditors would receive an 11.3% *pro rata* distribution.[19] Such treatments would result in a more meaningful distribution to the unsecured creditors while limiting the discrimination that exists between class seven and class eight. However, the Debtor presented no evidence as to why any of these alternatives were not proposed, were not feasible, or why the present Plan was preferable and feasible when compared to less discriminatory plans.

The Debtor also argues several policy reasons for favoring the educational loan claims over other unsecured claims. The Debtor asserts the policy arguments recognized by the court in *In re Mason*, 456 B.R. 245. However, despite the strong policy reasons favoring separation of nondischargeable educational loans, the court in *In re Mason* still required the debtor to articulate a "reason as to why [the] discriminatory treatment is being proposed." *In re Mason*, 456 B.R. at 250. Furthermore, the court in *In re Mason* eventually confirmed a plan that included educational loans and general unsecured creditors in the same class with *pro rata* distribution of approximately 47%.[20] After consideration of the Debtor's arguments, this Court finds insufficient evidence to

---

[18]Calculated by combining the $418,487.26 total claims in class seven and the $235,871.00 total claims in class eight and dividing the $235,871.00 payment by the $654,358.26 total claims.

[19]Calculated by dividing the $16,000.00 payment by the remaining $141,013.11 non-insider claim amount in class seven.

[20]The confirmed Chapter 13 plan in *In re Mason* treats all unsecured claims in a single class. *In re Mason*, No. 10-02092 at 3 (Bankr. N.D.W. Va. Oct. 21, 2011).

suggest the policy favoring nondischargeable student loans overrides the discriminatory treatment of class seven.

Finally, the Debtor failed to present evidence as to his financial condition as a whole that is necessary to determine whether the Plan discriminates unfairly. For instance, the Debtor is faced with approximately $390,981.00 in priority tax claims. Additionally, class seven includes approximately $277,474.00 in claims of unsecured insiders. The Debtor neither presented evidence as to how such large claims were incurred nor explained why treating the unsecured insiders with the remaining general unsecured creditors is necessary and reasonable. Without such evidence, it is impossible to determine whether the discrimination is fair.

Accordingly, based on the lack of evidence presented at the confirmation hearing, the Court finds the Debtor failed to prove by the preponderance of the evidence that separating class seven and class eight does not unfairly discriminate against the class seven creditors. The Plan is not fair and equitable and does not comply with § 1129. Therefore, confirmation of the Plan is **DENIED**.

**SO ORDERED.**

**END OF DOCUMENT**